## John W. Carson, Appellant, v. Thomas Bromley and Bromley Brothers' Carpet Company.

*Negligence—Nuisance—Percolation from stables into neighboring cellar.*

In an action to recover damages for alleged injuries caused by percolations from defendant's stable into the plaintiff's cellar, some negligence on the part of the defendant must be shown, and the burden of proof is upon the plaintiff to show it.

In an action to recover damages for injuries caused by percolations from a stable into a cellar on adjoining property, the Supreme Court will not reverse a judgment upon a verdict for the defendant where the evidence as to whether the percolations came from defendant's stable is conflicting, and the question is fairly submitted to the jury.

Argued Jan. 20, 1898.   Appeal, No. 331, Jan. T., 1897, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1894, No. 220, on verdict for defendant.   Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.   Affirmed.

Trespass to recover damages for injuries to plaintiff's cellar, caused by alleged percolations from defendant's stable. Before McMichael, J.

At the trial there was no evidence against the Bromley Brothers' Carpet Company, and the court directed a nonsuit as against them.

The facts of the case appear by the charge of the court below which was as follows:

As this case now stands, John W. Carson claims to recover damages from Thomas Bromley, because Carson, the plaintiff, is the owner of premises No. 1921 E. York street, constructed for a dwelling house and so occupied, and he alleges that the defendant wrongfully and injuriously altered, changed and reconstructed the buildings on premises No. 1919 E. York street (which for many years had been used for a dwelling house and afterwards for manufacturing purposes), and that the defendant has wrongfully and injuriously kept and continued the same building, altered and reconstructed into a stable as aforesaid, and that the said building was imperfectly altered, and has been and is so improperly and wrongfully constructed that the same should not be used for a stable, and further, that said stable is so carelessly, negligently maintained that the stable filth percolates through the walls into the cellar of plaintiff's premises, and that the noxious odors and gases from said stable permeate through the entire house of the plaintiff, rendering it unfit for habitation, and making said premises absolutely untenantable. That is what the plaintiff claims. The questions of fact for you to determine are two. First of all, did the stable filth, or the water saturated with the stable filth, go through the wall and get into the plaintiff's cellar? And, second, if it did, was it through the negligence or carelessness of the defendant? These are the two questions of fact which you are to determine from the evidence. [There is no question of fact to submit to you as to the imperfect construction of the defendant's premises on which you could find a verdict in damages against the defendant. I have not heard any such evidence, and will not submit to you any such question.] [10] Nor can you find a verdict for the plaintiff as against the defendant because the defendant erected a stable there. Having pur-

chased the land, he had a right to make any lawful use of his own property, and he had a right to put a stable on the land. The mere fact that a man has built a stable next to a dwelling is not enough to warrant you in making him pay for the depreciation, if there is any, in the adjoining property on account of that. The defendant had a right to build the stable there. [Nor, is it enough that water percolated through, even if it did percolate through, from the defendant's property, to the plaintiff's property.] [11] I do not propose, because I do not think it would aid you in coming to a conclusion, to instruct you fully upon the law of these questions, interesting as it may be to lawyers and judges; [but I instruct you, that unless you find that there was negligence or carelessness on the part of the defendant, you cannot find a verdict for the plaintiff in any amount.] [12] That is a question upon which the courts of many countries, and in fact, of many of the states of our Union, have differed; and the courts of Pennsylvania, many years ago, perhaps, took a different view from that which our highest tribunal has taken lately of this question. [But the law, is, that in order to recover damages in a case like this, there must be some negligence on the part of the defendant, and not only that, but the burden of proof is upon the plaintiff to show the negligence. He must show positively by affirmative proof that the defendant was guilty of negligence, either in the original construction of the adjoining property, of which I do not think there is any evidence here, or in the maintenance of the adjoining property. To put the question generally, if two people have adjoining properties, and one of them maintains his property so carelessly as to injure the property of the other, the adjoining property owner may recover. It is a question of fact for you: did the defendant, Thomas Bromley, maintain his own property, which was occupied, in part at least, by a stable, so negligently and carelessly as to cause damage to the property of Mr. Carson?] [13] [In determining that you have first of all got to determine whether the water came through from Mr. Bromley's property into Mr. Carson's property at all. That is a question of fact you have got to determine from the evidence, and there is some difference in the evidence as to that. And, secondly, whether, if the water did come through, it was the result of carelessness on the part of the defendant.] [14] There

are several things to be taken into consideration: the amount
of the water that was in the cellar, the character of the water
that was in the cellar and the condition of the plaintiff's prop-
erty; and you have had considerable testimony upon each of
those points. The plaintiff's witnesses, some of them, testified
as to the amount of water in the cellar—sometimes a few inches,
sometimes rising above the first step in the cellar, being a good
many inches, and that that occurred from time to time. [Now
do you think (as a question of fact that is a matter for you to
decide) that that amount of water in the cellar came from water
that was used in the defendant's stable?] [15]    I do not recol-
lect any testimony that was worthy of the credit of intelligent
men that it came from any other part of the defendant's prop-
erty. It may have been, but I do not consider it has been
proved (though that is for you entirely) that it came from the
cemented reservoir a good way off. But could that amount of
water come from the defendant's stable? There was the testi-
mony of experts, one of whom at least, if not all, are entitled
to your considerate and favorable judgment. But that testi-
mony is after all only the opinions of men, and it is to be scru-
tinized pretty carefully. They differed about it. Dr. Leffman
said, and I think repeated, that there was no odor to the water,
but that it showed salt upon a chemical analysis. He testified
that there was no striking odor in the cellar except the usual
mouldy odor of a wet cellar, and on cross-examination he said
there was no odor, but that, upon a chemical analysis, it turned
out that there was common salt in the water, and that that was
an ingredient of the urine of men and animals, and an ingre-
dient of most solids, though not of water, and he gave the
proportion—fifty-nine grains to the gallon, and about $\frac{1}{1000}$ was
salt and about $\frac{1}{6000}$ was solids. The other two experts did
notice odors. Their testimony is for you; I simply call your
attention to the divergence of the testimony, of these very scien-
tific men, and sometimes I am inclined to think their opinions
are not worth as much as those of ordinary men. Dr. Leffman
stands very high in his profession; he is a very skilful man, and
so are the other gentlemen; but they differ on the point as to
whether there was any smell to the water. When you come to
the defendant's case, about the stable and the care that was
taken of the stable, his witnesses testified that the stable was

well taken care of and kept clean, and that the hydrant, which might have let water into the plaintiff's cellar, was taken out, and that the horses were watered with water that was brought from one hundred feet away. The question of the credibility of witnesses is entirely for you; but if that is true, how could water to the extent of two or three feet from that stable get into the plaintiff's cellar?

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* among others were (10–15) portions of charge as above, quoting them.

*Ormond Rambo*, for appellant.—The defendant introduced testimony to prove that he had used due care in the conduct of the stable, and having used due care the defendant contends that he is not liable. The learned court below adopted the defendant's contention, and charged the jury that the case was one of negligence, and if the jury believed the defendant was not guilty of negligence, he could not be held answerable in damages; and declined to charge the jury that the case was one of nuisance, for which the defendant was liable in any event: Pottstown Gas Co. v. Murphy, 39 Pa. 257; Shuter v. City, 2 Phila. 228.

If the filthy percolations came from defendant's premises, he is liable. It is a nuisance: Haugh's App., 102 Pa. 42; Jacobs v. Worrell, 15 Leg. Int. 139; Robb v. Carnegie, 145 Pa. 324; Hauck v. Pipe Co., 153 Pa. 366; Humphries v. Cousins L. R., 2 C. P. Div. 239.

There is an infringement by defendant of plaintiff's enjoyment of his property: Rarick v. Smith, 5 Pa. Dist. Rep. 530; McCoy v. Danley, 20 Pa. 91; Casebeer v. Mowry, 55 Pa. 423; Smith v. Phillips, 8 Phila. 10; Bentz v. Armstrong, 8 W. & S. 40; Young v. Leedom, 67 Pa. 351; Rennyson's App., 94 Pa. 147; Good v. Altoona, 162 Pa. 493; Graham v. Penna. Co., 139 Pa. 149.

*Frank T. Lloyd*, with him *H. Le Grand Ensign* for appellees, cited Coal Co. v. Sanderson, 113 Pa. 127; Canal Co. v. Jacobs, 125 Pa. 246; Sentner v. Tees, 132 Pa. 216.

PER CURIAM, February 7, 1898:

There was no evidence against Bromley Brothers' Carpet Company, and therefore the learned court below did right in directing the nonsuit as against them. As to the defendant, Thomas Bromley, the trouble with the plaintiff's case is the insufficiency of his testimony to convince the jury that the percolations complained of came from the defendant's stable at all. The court left to the jury fairly the question whether such percolations did come from the defendant's stable, and the jury found they did not. An examination of the testimony convinces us that the verdict was right in this respect. A discussion as to whether the case was one of negligence or nuisance is altogether unimportant in view of the verdict. There is no merit in the assignments of error, and they are all dismissed.

Judgment affirmed.